Kathy VAN HOUDNOS, Plaintiff-Appellant,

v.

Robert EVANS, et al., Defendants-Appellees.

No. 86–1365.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 19, 1986.

Decided Dec. 12, 1986.

William J. Campbell, Senior District Judge, concurred and filed opinion.

Mary Lee Leahy, Leahy and Leahy, Springfield, Ill., for plaintiff-appellant.

John A. Mehlick, Sp. Asst. Atty. Gen., Springfield, Ill., Rita M. Novak, Illinois Atty. Gen. Office, Chicago, Ill., for defendants-appellees.

* The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois,

Before BAUER, Chief Judge, WOOD, Circuit Judge, and CAMPBELL, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiff Kathy Van Houdnos brought a sexual discrimination suit against six employees of the Illinois State Museum. She appeals from a judgment for the defendant employees, entered after the district judge directed verdicts in their favor. 627 F.Supp. 476 (1986). Five of the defendants, *viz.*, Bruce McMillan, Basil Hedrick, Maureen McKenna, Susan Pickel-Hedrick, and Judi Johnson, had verdicts directed in their favor at the close of plaintiff's case-in-chief. The sixth defendant, Robert Evans, had his motion for a directed verdict denied at the close of plaintiff's case-in-chief, so he renewed his motion for a directed verdict at the close of all the evidence. The district judge reserved his decision on Evans's renewed motion. After the jury returned a verdict in favor of plaintiff and against defendant Evans only on the issue of liability in this bifurcated trial, the district judge immediately granted Evans's motion for a directed verdict and entered judgment notwithstanding the verdict of the jury. Plaintiff challenges the district judge's granting of defendants' motions for directed verdicts.

## I. FACTUAL BACKGROUND

Plaintiff received a bachelor's degree in fine arts from Eastern Illinois University. Several years later, in the spring of 1978, she began studying for a master's degree in community arts management at Sangamon State University. Concurrent with her enrollment at Sangamon State, plaintiff applied for an intern position in the art department of the Illinois State Museum, a museum of natural history located in Springfield, Illinois. Plaintiff was awarded the internship and worked at the museum throughout the spring. After the intern-

is sitting by designation.

ship ended, and toward the end of the summer, the museum employed plaintiff full time in the art department as a curatorial assistant. This position not only provided plaintiff with gainful employment, it also partially satisfied the requirements toward her master's degree. Plaintiff's curatorial assistant position was funded through the Comprehensive Employment Training Act ("CETA"); as a result, plaintiff's position was funded for one year only.

During plaintiff's year of employment, in January 1979, another employee in the art department, Steve Mercer, left the museum. Plaintiff and the other members of the art department combined their efforts to do the tasks Mercer had been doing. Plaintiff, believing she was qualified, applied for Mercer's job when the CETA funding lapsed for her position. After the culmination of a series of events, however, plaintiff did not receive Mercer's job. Instead, a male applicant was selected for the position. This lawsuit eventuated.

## II. LEGAL STANDARD

As an initial matter, we note that "[i]n reviewing a district court's grant of a motion for directed verdict, the standard to be applied by the court of appeals is the same as that applied by the trial court." *Panter v. Marshall Field & Co.*, 646 F.2d 271, 281 (7th Cir.), *cert. denied*, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981).

The events that occurred between the time of Mercer's departure from the museum and the rejection of plaintiff's application to fill Mercer's position are at the heart of this controversy. By directing verdicts for defendants, the district judge necessarily found that plaintiff had not produced enough evidence about those events, even when viewed in the light most favorable to plaintiff's position, to allow the jury to make a reasonable finding in plaintiff's favor. That is the standard by which directed verdicts and judgments notwithstanding jury verdicts are judged. The district judge must determine "whether the evidence presented, combined with all the reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in a light most favorable to the party against whom the motion is directed." *Tice v. Lampert Yards, Inc.*, 761 F.2d 1210, 1213 (7th Cir.1985); *Benson v. Allphin*, 786 F.2d 268, 279 (7th Cir.) ("The standard for granting a directed verdict is very generous to the nonmovant."), *cert. denied*, — U.S. —, 107 S.Ct. 172, 93 L.Ed.2d 109 (1986). The district judge is not permitted to resolve conflicts in the testimony or weigh and evaluate the evidence. These functions are reserved for the jury. *See, e.g., Continental Casualty Co. v. Howard*, 775 F.2d 876, 879 (7th Cir. 1985), *cert. denied*, — U.S. —, 106 S.Ct. 1641, 90 L.Ed.2d 186 (1986).

Nevertheless, the district judge must determine whether "the evidence, taken as a whole, provides a sufficient probative basis upon which a jury could reasonably reach a verdict, without 'speculation over legally unfounded claims.' " *Panter v. Marshall Field & Co.*, 646 F.2d 271, 281 (7th Cir.) (quoting *Brady v. Southern Railway*, 320 U.S. 476, 480, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943)), *cert. denied*, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981). As the Supreme Court recognized long ago:

A mere scintilla of evidence is not enough to require the submission of an issue to the jury. The decisions establish a more reasonable rule "that in every case, before the evidence is left in the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed."

*Gunning v. Cooley*, 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720 (1930) (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448, 20 L.Ed. 867 (1871) (footnote omitted)); *Hohmann v. Packard Instrument Co.*, 471 F.2d 815, 819 (7th Cir. 1973).

Therefore, if plaintiff does produce enough evidence of sexual discrimination,

viewed in the light most favorable to her claim, the judge cannot direct a verdict but instead must send the case to the jury.

## III. DISCUSSION

Plaintiff pursued her sexual discrimination claim under 42 U.S.C. § 1983 (1982).[1] A successful claim under section 1983 requires plaintiff to prove (1) that defendants acted under color of state law, (2) that defendants' actions deprived plaintiff of her rights, privileges, or immunities guaranteed by the Constitution, and (3) that defendants' conduct proximately caused plaintiff's deprivation. *Coleman v. Frantz,* 754 F.2d 719, 722, 725 (7th Cir. 1985); *Crowder v. Lash,* 687 F.2d 996, 1002 (7th Cir.1982). Moreover, plaintiff must demonstrate that defendants acted with discriminatory intent as a prerequisite to establishing a *prima facie* case. *Parker v. Board of School Commissioners,* 729 F.2d 524, 528 (7th Cir.1984). Once plaintiff makes out a *prima facie* case of discrimination, the burden then shifts to defendants to articulate a legitimate, nondiscriminatory reason for participating in the questioned conduct. If defendants do articulate such a reason, the burden shifts back to plaintiff to demonstrate that the proffered reason is merely a pretext for discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973); *Griffin v. Board of Regents,* 795 F.2d 1281 (7th Cir. 1986).

To understand how these legal requirements are applied to the series of events controlling the disposition of this lawsuit, the administrative organization at the Illinois State Museum must be laid out. The museum employs approximately 100 people on a full-time basis and 50 part time. The museum is managed by a director, who, in turn, is assisted by an assistant director. At the times relevant to this lawsuit, defendant Bruce McMillan was the director of the museum and his assistant was defendant Basil Hedrick. For administrative purposes, the museum is divided into six departments: anthropology, archaeology, art, botany, geology, and zoology. The director and his assistant manage the museum through these departments. One of these departments, the art department, was managed by defendant Robert Evans, who functioned as head of the department in his position as the curator of art. In addition to plaintiff, other employees serving under Evans in the art department included Steve Mercer, to whose position as a curatorial assistant plaintiff aspired, defendant Maureen McKenna, a curatorial assistant, and defendant Susan Pickel-Hedrick, also a curatorial assistant. The other defendant to this lawsuit, Judi Johnson, was a curatorial assistant in another department in the museum and did not work under the direction of defendant Evans. Johnson also served as the affirmative action officer for the museum.

Viewed in the light most favorable to plaintiff, this is what the evidence showed for each defendant with respect to the events that occurred between the time of Mercer's departure from the museum and plaintiff's failure to receive his job.[2]

### A. Department Head Evans

When Mercer left the museum in January 1979 the other employees of the art department, including plaintiff, combined their efforts to complete the duties for which Mercer had been responsible. Three months later, in April 1979, Evans, as head of the art department, called a meeting of the art department's employees,

---

1. Plaintiff commenced this lawsuit on the bases of section 1985 and section 1983. Before trial began, however, plaintiff's counsel informed the district judge she was dropping the section 1985 claim, leaving section 1983 as the sole basis of liability. Some confusion must have existed in the district court because the district judge's order analyzes the evidence presented under both section 1983 and section 1985.

2. In reviewing the evidence, we note that we have searched the record itself to verify the accuracy of the events portrayed in this opinion. Therefore, we deny plaintiff's "Motion to Strike Defendant-Appellee-Evans's Statement of Facts."

*viz.*, Evans, McKenna, Pickel-Hedrick, and plaintiff. The assistant director of the museum, Hedrick, was also in attendance. The purpose of the meeting was to develop a job description to aid in the search for a replacement for Mercer. Plaintiff testified that at the meeting Evans said he "wanted to word the description in such a way that it would discourage women from applying for the position because he wanted to hire a man for that position."

Two months after this meeting, on June 19th, plaintiff met with Evans. She was interested in job prospects that might be available when her CETA-funded position lapsed at the end of the summer. Evans told plaintiff the only job available was the curatorial assistant position left vacant by Mercer's departure. Plaintiff responded by saying she wanted to apply for Mercer's position. Plaintiff testified Evans then said she "need not apply for it because they were going to hire a man for that position."

Three days after her meeting with Evans, plaintiff met with defendant McMillan, director of the museum. Plaintiff recounted to McMillan her meeting with Evans. McMillan told plaintiff that the museum was an equal opportunity employer and that he would check into the situation.

Three days after her meeting with McMillan, plaintiff was called in to speak with McMillan's assistant, defendant Hedrick. Hedrick told plaintiff she had every right to apply for Mercer's position, but he also indicated she might be tested on her abilities to lift heavy objects, use carpentry tools, and drive a truck.

Sometime after the conclusion of this meeting Hedrick sought out his subordinate Evans. He told Evans he was aware that Evans had been making discriminatory remarks with respect to potential applicants for Mercer's position. Hedrick testified that Evans then indicated his preference for hiring a male to fill the position. Hedrick recalled at trial that Evans indicated "most males have the tendency to be stronger than most females, that he would indeed prefer a male in the posi-

tion, but ... that he had not been actively discriminating against anyone."

Two days after plaintiff had spoken with Hedrick, she was called in to speak with Evans. Evans told plaintiff he was going to interview her for Mercer's position. He began the interview by telling plaintiff he was disappointed that she was interested in the position. He then stated plaintiff "was eighty-five percent qualified for the position, and fifteen percent was muscle." Evans also admitted he "was specifically looking for a guy fresh out of college to fill the position."

Immediately after the conclusion of this interview with Evans, plaintiff went to see a co-worker in the art department, defendant Pickel-Hedrick. Plaintiff asked Pickel-Hedrick: "Bob Evans is going to hire a man in his position, isn't he ...?" Pickel-Hedrick nodded and said yes.

Plaintiff also testified that at some time during the weeks these meetings were taking place, Evans made another public reference to his desire to hire a male for Mercer's position. Along with plaintiff, another employee of the museum and Evans were in the art department offices. The other employee asked Evans if he had yet filled Mercer's position. Evans looked at plaintiff, who has red hair, and said: "I'd hire the redhead sitting across the table if she was a man."

At the conclusion of this series of meetings, on June 29th, plaintiff submitted her written application and resume to Evans. By July 9th, however, plaintiff received a letter stating that the art department had stopped searching for a replacement for Mercer's position because of a lack of funding. Plaintiff continued to work in the art department until the first week of September when her CETA funding ran out. Ten days after she concluded her employment at the museum, plaintiff received a letter from Evans. The letter said that the curatorial assistant position was again open and that interested applicants could apply for it. Plaintiff filled out an enclosed questionnaire and sent it back to Evans with her letter of application. On October 22nd,

plaintiff received another letter from the museum stating that six finalists had been selected for interviews; plaintiff was not one of those finalists. Lawrence Rhoads, one of the six finalists, was eventually hired for the position.

On this evidence it is clear plaintiff made out enough of a sexual discrimination claim to send the case to the jury. She satisfied the requisite elements of a section 1983 claim. First, Evans was employed as head of the art department in a museum owned and operated by the state of Illinois. He clearly acted under color of state law in that capacity with respect to plaintiff. Second, with authority to make personnel decisions in his department, Evans hired a man instead of plaintiff to fill the curatorial assistant position in the art department. And third, taken together, all of Evans's discriminatory remarks show that Evans acted with discriminatory intent in awarding the job to a man and not to plaintiff. *Cf. McNeil v. Economics Laboratory, Inc.,* 800 F.2d 111, 115 & n. 3 (7th Cir.1986) (holding supervisor's comment that "we are able to make ourselves independent of our reliance on old-timers without the right motivation or education and [instead] can hire bright young people fresh out of college" sufficient evidence of discriminatory intent to support *prima facie* case of age discrimination).

To be sure, other evidence was presented at trial that tended to show Evans did not discriminate against plaintiff. But the district judge cannot weigh conflicting evidence in ruling on a motion for a directed verdict. He must only determine whether enough evidence exists, viewed in the light most favorable to plaintiff's position, to require him to send the case to the jury. The district judge here was clearly presented with that quantum of evidence.

Evans argues, however, that apart from the issue of his own discriminatory posture toward plaintiff, he was not solely responsible for the hiring decision and could not have deprived plaintiff of her rights. Evans claims that a "committee" system was used to search for Mercer's replacement. This search through a committee system resulted in a male being selected for Mercer's position solely on the basis of merit and not on the basis of sex.

The director of the museum, defendant McMillan, testified that the committee system meant that "more than one person would have input into helping select a candidate for a position." Each of the department heads was authorized to make the decision whether the committee system would be used to hire an applicant for any entry-level position within his department. To fill Mercer's position, Evans claims he distributed application materials to employees of the museum inside and outside of his department. Evans further claims these participating employees, members of his search committee, ranked the applicants in numerical fashion on the basis of merit. After evaluating these rankings, Lawrence Rhoads was chosen to fill Mercer's position. Thus, even assuming he made some discriminatory remarks, Evans contends he did not, and indeed could not, proximately cause any deprivation of plaintiff's rights by awarding the curatorial assistant position to Mr. Rhoads and not to plaintiff. Even though he ultimately did make the decision to hire a male instead of plaintiff, Evans argues he did so on the basis of the committee's objective rankings and not his subjective preferences.

Once Evans articulated this nondiscriminatory reason for hiring a male applicant, *i.e.,* the committee search, plaintiff presented evidence to show Evans's reason was merely a pretext for his underlying discrimination. Evans's undisputed ranking for the top six applicants placed men in the first three slots and women in the last three. Only the top three applicants were to be interviewed. Plaintiff demonstrated that the membership of the committee was disputed by those very persons Evans claimed were on the committee. Moreover, even assuming a committee of sorts did exist, plaintiff presented evidence that Evans controlled or at least exerted influence over the committee. He was the head of the art department. He received all of the

resumes, applications, and questionnaires. He selectively distributed those materials to other employees of the museum. He made the final decision on which applicant would fill Mercer's position.

Again, the district judge was not at liberty to weigh the evidence or assess the credibility of the witnesses at this stage of the proof. Plaintiff presented enough evidence to rebut Evans's claim of hiring Mercer's replacement on the basis of an objective committee search. Rather than resolving the issue himself, the district judge should have sent the case to the jury, as he did, and then denied Evans's motion for a directed verdict and entered judgment on the jury's verdict. "Both we and the district court must be reluctant to remove an issue from the purview of the jury on either a directed verdict or a judgment notwithstanding the verdict." *Selle v. Gibb,* 741 F.2d 896, 900 (7th Cir.1984). As to defendant Evans then, the judgment entered notwithstanding the jury's verdict must be reversed.

As for the other five defendants, plaintiff also challenges the district judge's granting of their motion for directed verdicts. To understand plaintiff's challenge to these five defendants, some procedural history must be set out. In her initial complaint, plaintiff brought suit against Evans alone. In his answer to that initial complaint, Evans raised the claim of a committee search as an affirmative defense. Evans asserted: "The failure to hire plaintiff was the result of actions by at least five individuals, of whom defendant was one, and the failure to hire plaintiff is not attributable to the defendant either as cause in fact or proximate cause." In response to Evans's affirmative defense, plaintiff thereafter filed an amended complaint naming, in addition to Evans, five other employees of the museum as defendants. At this stage of the litigation, plaintiff was still relying on section 1985, in addition to section 1983, as a statutory basis of liability. Section 1985 is somewhat similar to section 1983, but it requires two or more people to conspire to deprive a person of his constitutional rights. *See* 42 U.S.C. § 1985(3) (1982). Thus, plaintiff's only substantive allegation in her amended complaint against four of the five other defendants, *viz.*, Hedrick, McKenna, Pickel-Hedrick, and Johnson, was that, in the course of the meeting in which the job description was formulated, "[t]he Defendants agreed that the position should be filled by a man and from then on conspired together to see that the position was filled by a man." As to the fifth defendant, McMillan, plaintiff alleged that he "approved, ratified and consented to the course of conduct of the other Defendants in having the position filled by a man."

Before the trial began, however, plaintiff dropped her claim under section 1985. That left section 1983 as the only statutory basis of liability against which all six defendants' conduct must be evaluated. Instead of proving the existence of a conspiracy, plaintiff was required to show that each of the remaining five defendants satisfied the elements of a section 1983 claim. Because the district judge directed a verdict for these five defendants at the close of plaintiff's case-in-chief, we do not consider all of the evidence. Rather, we must look at plaintiff's evidence alone, viewed in the light most favorable to her position, to determine whether plaintiff established a *prima facie* case of discrimination under section 1983 against each defendant.

As to these five defendants, there is no question they acted under color of state law. All five were employees of a museum owned and operated by the state of Illinois. And except. for defendant McMillan, each of them did participate to some degree in the hiring process by reviewing applications. But as we explain below, none of them was the proximate cause of plaintiff's failure to receive Mercer's job nor did any of them exhibit the discriminatory intent necessary to sustain a section 1983 claim.

*B. Director McMillan*

Defendant McMillan was the director of the museum. His input into hiring decisions was minimal or nonexistent,

unless the position to be filled was an upper-level position such as assistant director or department head. Therefore, in making an employment decision for an entry-level position like a curatorial assistant, McMillan would have virtually no involvement. Indeed, by plaintiff's own admission McMillan was not a member of the search committee and had virtually no contact with plaintiff. He merely spoke with plaintiff about the available position when she approached him about Evans's allegedly discriminatory remarks. He assured plaintiff the museum was an equal opportunity employer and said he would look into the matter. In fact, he recalled that he played a role in seeing that a search committee was appointed.

Other than that brief contact with plaintiff, however, McMillan was not involved in the hiring process. Because he was not part of the process, he could not have been a cause, proximate or otherwise, of plaintiff's failing to obtain Mercer's job.

Moreover, even if McMillan had been a part of the hiring process, plaintiff introduced no evidence showing McMillan acted with discriminatory intent. To the contrary, McMillan reassured plaintiff that the museum was an equal opportunity employer and then attempted to ensure that the hiring process would be conducted in a non-discriminatory manner. Thus, plaintiff failed to establish a *prima facie* claim under section 1983 with respect to defendant McMillan and therefore the district judge properly directed a verdict in his favor.

### C. Assistant Director Hedrick

■ Defendant Hedrick was assistant director of the museum; as such, he worked directly under McMillan. His participation in the hiring process was limited to reviewing the top six applicants' resumes and application questionnaires that were given to him by Evans. Plaintiff was not one of these six applicants and Hedrick therefore never reviewed her application materials. Thus, Hedrick was not a cause of plaintiff's failure to receive Mercer's job.

Hedrick also attended the meeting under defendant Evans's direction in which the job description was formulated. Because he was at the meeting, Hedrick would have heard Evans say that the description should be worded to discourage women from applying because he, Evans, wanted a man for the position. Hedrick did not respond at all to Evans's discriminatory remark. Silence alone, however, is not evidence of discriminatory intent. *Cf. Adams v. Pate,* 445 F.2d 105, 107 (7th Cir.1971) (holding prison warden not liable to prisoner under section 1983 for alleged beatings ordered by prison guards when warden was "informed ... of the beatings but he did nothing to stop them"). Even plaintiff admitted that the wording of the job description crafted by the committee was gender neutral. Moreover, plaintiff herself was in attendance at this same meeting and did not respond to Evans's comments. Hedrick certainly displayed no more discriminatory animus toward plaintiff through his silence in this meeting than plaintiff displayed toward herself.

Hedrick also confronted Evans at a later time on the basis of rumors that Evans was making discriminatory remarks. Hedrick's opinion, formed from previous experience with Evans, was that Evans did not favor males or females in employment settings. Although Evans told Hedrick during this discussion that he preferred to hire a man for Mercer's position, he also assured Hedrick he would not discriminate against anyone. Hedrick's participation in this discussion is not evidence of discriminatory intent. Although Evans said he preferred to hire a man, he also assured Hedrick he would not discriminate. Evans's assurance fell in line with what Hedrick knew about Evans from previous experience.

Hedrick's only direct contact with plaintiff took place during his meeting with her to discuss the museum's filling of Mercer's position. Plaintiff claims Hedrick attempted to discourage her from seeking Mercer's job. Whatever plaintiff's subjective impressions of that meeting may have been, however, the record does not provide any objective support for her allegation. Plaintiff testified that Hedrick "wanted to assure me that I had every right to apply for

the position." Hedrick then told plaintiff the curatorial assistant position required heavy lifting, carpentry skills, and the ability to drive a truck and that she might be tested in all three areas. Apparently plaintiff felt these remarks were designed to discourage her from seeking Mercer's job and were evidence of Hedrick's discriminatory animus. These remarks alone, however, in the context of the overall discussion, do not show discriminatory intent on Hedrick's part. Hedrick's remarks merely informed plaintiff of specific job requirements and the possibility of testing. Without more, they simply do not support plaintiff's allegation. Because plaintiff demonstrated no discriminatory intent on Hedrick's part, her section 1983 claim cannot stand. Therefore, the district judge properly directed a verdict for Hedrick.

### D. Curatorial Assistant McKenna

Defendant McKenna was a curatorial assistant in the art department. Her participation in the hiring process was limited to reviewing the application materials submitted by the applicants. She did not cause a male to receive Mercer's job rather than plaintiff.

McKenna too was present at the meeting in which the job description was formulated and would have heard Evans say he preferred a man for the position. Like plaintiff and Hedrick, however, she made no response to this comment. Based on McKenna's failure to disagree with her superior Evans, plaintiff testified McKenna "was happy it was going to be a man."

The record is devoid, however, of any further evidence to which plaintiff can point to demonstrate a discriminatory intent on McKenna's part. McKenna said nothing. In this setting, silence alone cannot serve as evidence of a discriminatory animus. Plaintiff's reliance on the presence of Evans, McKenna's superior, to give probative value to McKenna's silence is unpersuasive. Nothing in the record shows McKenna was reluctant to disagree with Evans over a hiring decision.

Plaintiff failed to show McKenna acted with a discriminatory animus. Therefore, she failed to make out a *prima facie* discrimination claim and the verdict directed for McKenna was thus proper.

### E. Curatorial Assistant Pickel-Hedrick

Defendant Pickel-Hedrick was also a curatorial assistant in the art department, but she was not a cause of plaintiff's failure to receive the job because she had no direct participation in the hiring process.

She too attended the meeting in which the job description was created and would have heard Evans say he preferred a man to fill Mercer's position. And, like plaintiff, Hedrick, and McKenna, defendant Pickel-Hedrick also remained silent when Evans uttered the discriminatory remark. Plaintiff charges Pickel-Hedrick with the same discriminatory animus she attributes to McKenna. As we explained above, however, this allegation is insufficient to support a section 1983 claim.

Pickel-Hedrick's only direct contact with plaintiff in regard to Mercer's position immediately followed plaintiff's interview with Evans. Plaintiff asked Pickel-Hedrick if Evans was going to hire a man to fill Mercer's position. Pickel-Hedrick's only response was to nod her head and say yes. This abbreviated response to plaintiff's question hardly serves as evidence of a discriminatory animus. Plaintiff asked Pickel-Hedrick whether Evans was going to hire a man, not whether Pickel-Hedrick was going to participate in such a hiring. Moreover, Pickel-Hedrick's response to plaintiff's question about Evans cannot be construed as a tacit endorsement of Evans's proposed hiring of a man. She responded to a question about what Evans was likely to do, not whether she agreed with his proposed action. Because Pickel-Hedrick exhibited no discriminatory animus, plaintiff's section 1983 claim as to her must fail. The district judge's directed verdict in favor of Pickel-Hedrick, therefore, is appropriate.

### F. Curatorial Assistant Johnson

Defendant Johnson was a curatorial assistant in the anthropology department.

She reported to the head of her department and to Hedrick, not to Evans. She was also the affirmative action officer for the museum. Johnson reviewed applications and resumes as part of the hiring process. Hedrick gave her the application materials with instructions to rank the applicants on their qualifications as listed in the job description and ignore other factors such as personal qualifications, age, and sex. Johnson testified plaintiff's application materials were included in the group of materials given to her by Hedrick. She ranked the applicants and gave the ranking to Hedrick. Apart from simply ranking the applicants, she had no other participation in the hiring process and was not a cause of plaintiff's failure to receive Mercer's job.

Johnson was not present at the meeting in which the job description was created and therefore did not hear Evans's discriminatory remark. She testified, however, that she had heard a rumor that Evans wanted a male to fill Mercer's position. Johnson did not act on the rumor. She testified she knew from prior experience with Evans that he would not discriminate. These bare facts alone are not evidence of a discriminatory animus. Johnson merely heard a rumor, which she considered not to be credible, and upon which she did not act. Plaintiff thus failed to establish a *prima facie* case of discrimination against Johnson and the verdict directed in Johnson's favor must stand.

## IV. CONCLUSION

For the foregoing reasons we affirm the verdicts directed by the district judge for defendants McMillan, Hedrick, McKenna, Pickel-Hedrick, and Johnson. As for the verdict directed for defendant Evans, and the district judge's judgment entered notwithstanding the jury's verdict, we reverse. The costs of this appeal will be borne by the respective parties. Because the district judge bifurcated the trial as to liability and damages, our decision affects only the issue of liability. Therefore, without applying Seventh Circuit Rule 18, we remand this case to resolve the issue of damages with respect to defendant Evans.

AFFIRMED IN PART AND REVERSED IN PART.

WILLIAM J. CAMPBELL, Senior District Judge, concurring:

I am in full agreement with the opinion. I write merely to echo my concern, so aptly expressed by one of my colleagues, that juries in § 1983 cases are becoming like law clerks, handing their recommendations to the judge who then does as he sees fit. As a district judge since 1940, I have great confidence in the jury system. I am alarmed by what I sense to be an increased prevalence of directed verdicts against prevailing plaintiffs in § 1983 actions. In my opinion, this case represents a less-known but equally dangerous brand of "judicial activism," and our reversal here should serve as a warning or lesson concerning the precariousness of such activism.