**E. Jean CARTER, Plaintiff,**

v.

**SEDGWICK COUNTY, KANSAS, et al., Defendants.**

**No. 87–1114–K.**

United States District Court,
D. Kansas.

Sept. 30, 1988.

On Motion to Alter or Amend Judgment
Dec. 2, 1988.

J. Greg Kite and Beverly Dempsey, Wichita, Kan., for plaintiff.

Warner Moore, Wichita, Kan., for defendants.

### MEMORANDUM AND JOURNAL ENTRY OF JUDGMENT

PATRICK F. KELLY, District Judge.

This is a civil rights action in which plaintiff contends she suffered sexual harassment and was unlawfully terminated from her employment on the basis of her race and sex, in violation of 42 U.S.C. § 1981, 42 U.S.C. § 1983, and 42 U.S.C. § 2000e *et seq.* (Title VII).

This case was fully tried to the court September 6, 1988 through September 16, 1988. At the close of trial, the court ruled from the bench in favor of plaintiff on her § 1981 claim, and against plaintiff on her Title VII and § 1983 claims. At that time, the court stated that its findings would be finalized in a brief, written memorandum and journal entry. Accordingly, the court makes the following findings of fact and conclusions of law, which incorporate in full its previous ruling from the bench.

### Findings of Fact

The plaintiff, E. Jean Carter, is a black female hired by the Sedgwick County Board of Commissioners as an office associate for the Department of Sedgwick County Community Corrections on June 23, 1983. This employment placed her under the supervision of defendant Jon Cameron, the Community Corrections Director, and defendant Michael Brand, the Assistant Director. Plaintiff was amply qualified for this position by reason of her prior education, training and experience.

Plaintiff's duties with the Community Corrections Department were generally secretarial in nature and included some typing, handling correspondence, answering the telephone, acting as receptionist, keeping track of supplies, doing the payroll, and filing. Plaintiff also acted as recording secretary for the Board of Community Corrections and was responsible for coordinating the department's resident supervisors with the board.

During plaintiff's employment with the department, her work performance was periodically evaluated by defendant Cameron, and she was consistently graded above average in all areas, outstanding in others. She was rewarded for her work by receiving a merit pay increase each time such an increase was considered.

Plaintiff testified that during the course of her employment she was subjected to numerous racial slurs and epithets at the hands of defendant Brand, and was sexually harassed by defendant Cameron. Specifically, as to plaintiff's claim of race discrimination, plaintiff testified that defendant Brand referred to plaintiff on several occasions as "Jon's [Cameron] token nigger," and at other times would tell plaintiff

it was "nigger pick day." Plaintiff claims defendant Brand kept a picture of a black family in his office, and when plaintiff questioned Brand about the picture, he boasted of his own "nigger blood" and of his sexual conquests of "black pussy." Plaintiff further testified that on one occasion defendant Brand presented her with a picture of "Long Dong Silver", a photo of a black male with an elongated penis. On another occasion, Brand pinned a postcard containing a picture of two black children ("Buckwheat" and "Stymie") of "Little Rascals" fame on a bulletin board behind plaintiff's desk. Plaintiff believes the postcard was intended to be a representation of her own two children, as plaintiff was unmarried at the time and defendant Brand had, on another occasion, referred to plaintiff's children as "the two lost kids with no daddy."

On at least three occasions, plaintiff testified, defendant Brand would use the expression "dark clouds falling, not long before day," an expression plaintiff testified is considered a racially derogatory remark by most black individuals. Plaintiff additionally testified that defendant Brand often referred to her as "his Ethel Roach," a moniker plaintiff considered racist and uncomplimentary. Plaintiff explained that Ethel Roach was a black female inmate who wore rags around her head and had big lips, and whom defendants Brand and Cameron had known when they worked together previously in Iowa.

Finally, plaintiff claims that sometime in February of 1985, the month in which plaintiff was terminated, defendant Brand informed plaintiff that he would "get even with her."

On February 22, 1985, defendant Cameron left the employ of the county, and defendant Brand succeeded him as director. On defendant Brand's very first day as director, February 25, 1985, Brand terminated plaintiff's employment, giving her 15 minutes to clear out her things and advising her to "never come back on county property."

At trial, defendant Brand denied plaintiff's claims of race discrimination and stated he fired plaintiff because she was too assertive, he was unsatisfied with her performance for defendant Cameron, and he wanted his "own person." While other witnesses supported defendant Brand's denial of racial slurs, etc., plaintiff presented a rebuttal witness, Cyril Foote, who previously was employed with the Community Corrections Department and who is currently the county's Affirmative Action Director. Foote testified that Brand frequently referred to plaintiff as "Jon's token nigger," and would discuss with Foote the prospects of "black pussy and black cock."

As to her claims of sexual harassment, plaintiff primarily bases that claim upon a number of sexual objects she received in late 1984 and 1985. These objects, which were introduced as exhibits at trial, included a "Mr. Peter Party Mold;" a "Pecker Pop Top;" a "Mouth Organ;" a "Sexy Hotdog;" and "Happiness," nude male and female figurines whose purpose was obvious. Plaintiff testified that some of these items were wrapped in paper and placed on her desk before she would arrive for work in the morning. Another item, the sexy hotdog, was given to her as a "gift" for her birthday, and came with a birthday card signed by Jon Cameron and his wife, Joan. Plaintiff testified that when she received these gifts she would put them in her bottom drawer and felt "hurt, humiliated, embarrassed, angry and degraded."

Defendant Cameron's wife, Joan Cameron, testified that she and plaintiff were good friends and often talked about men in a joking way. Joan Cameron testified that she was responsible for giving plaintiff some of the "gifts." She explained that the gifts were part of a continuing exchange of jokes between herself and plaintiff, which included suggestive cards and sexual objects. Mrs. Cameron stated that both she and Mr. Cameron believed the plaintiff enjoyed these jokes and did not consider them offensive, and apparently the situation simply got out of hand.

Following her termination, plaintiff filed the present action against Jon Cameron, Michael Brand, Sedgwick County, the

Board of County Commissioners—both collectively and individually, and County Administrator Tim Witsman. Plaintiff alleges she suffered sexual harassment and was unlawfully terminated and discriminated against due to her race and sex, in violation of 42 U.S.C. § 1981, 42 U.S.C. § 1983, and 42 U.S.C. § 2000e *et seq.* (Title VII).

In an order dated February 16, 1988, this court granted summary judgment as to any individual liability on the part of defendant Cameron, Commissioners Gragg, Scott, and Hentzen, and County Administrator Witsman, on the ground that these individually named defendants were at all times acting in their official capacities within the scope of their employment and were thus exempt from liability under K.S.A. 75–6116. However, the court denied defendants' motion for summary judgment on plaintiff's Title VII claim and found that plaintiff was not exempt from the protection of Title VII. 685 F.Supp. 797.

With respect to the claims against the remaining defendants, the court makes the following conclusions of law:

*Conclusions of Law*

The plaintiff has raised a claim of sexual harassment under Title VII. Briefly stated, she claims that defendant Cameron involuntarily foisted upon her, as gifts, certain sexual objects which she found to be wholly intolerable, demeaning and embarrassing.

As to this claim, the county has urged that even if such a practice existed at the hands of defendant Cameron, which the county has denied, the plaintiff has failed to exhaust her administrative remedies in connection therewith. Defendants point out that the complaint filed by plaintiff with the Kansas Commission on Civil Rights generally alleges that plaintiff was discriminated against on the basis of her race. The complaint does not, however, allege that plaintiff was discriminated against on the basis of her sex.

■ As this court has previously noted, a plaintiff must file a timely charge with the proper administrative agency encompassing the acts complained of as a prereq-

uisite to filing suit under Title VII in federal court. *Jensen v. Board of County Commissioners,* 636 F.Supp. 293, 300 (D.Kan. 1986). Further, "[n]ew claims in the complaint are cognizable only if they are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Id.* (quoting *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.,* 538 F.2d 164, 167 (7th Cir.1976)).

■ Since plaintiff's claim of sex harassment is separate and distinct from her claim of race discrimination, and since the only claim formally presented and addressed through the KCCR was one of race discrimination, this court is without jurisdiction to hear plaintiff's claims of sexual harassment under Title VII.

While plaintiff's claim of sexual harassment against defendant Cameron in his official capacity under Title VII must fail, that claim is still contemplated under 42 U.S.C. § 1983. Section 1983 provides a cause of action against any person who, acting under color of state law, deprives another person of any constitutional or federal statutory rights. A government employer's discrimination on the basis of sex may violate rights guaranteed by the Constitution.

The Supreme Court has held that the equal protection clause contains a "federal constitutional right to be free from gender discrimination" that does not serve important governmental objectives and is not substantially related to those objectives. *Davis v. Passman,* 442 U.S. 228, 234–35, 99 S.Ct. 2264, 2271–72, 60 L.Ed.2d 846 (1979). Courts which have interpreted this language as it applies to sexual harassment by a state employer have determined that such harassment constitutes sex discrimination in violation of the equal protection clause and is actionable under 42 U.S.C. § 1983. *See, e.g., Bohen v. City of East Chicago, Ind.,* 799 F.2d 1180, 1185 (7th Cir.1986); *Scott v. City of Overland Park,* 595 F.Supp. 520, 529 (D.Kan.1984). *See also Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (when a supervisor sexually har-

asses a subordinate because of the subordinate's sex, that supervisor discriminates on the basis of sex).

Thus, this court concludes that since sexual harassment constitutes a form of sex discrimination which is actionable under the equal protection clause, plaintiff's § 1983 action must lie.

■ A successful claim under § 1983 requires plaintiff to prove (1) that defendants acted under color of state law; (2) that defendants' actions deprived plaintiff of her rights, privileges, or immunities guaranteed by the Constitution; and (3) that defendants' conduct proximately caused plaintiff's deprivation. *Van Houdnos v. Evans*, 807 F.2d 648, 651 (7th Cir.1986). Moreover, plaintiff must show that defendants acted with discriminatory intent as a prerequisite to establishing a *prima facie* case. *Id.*

■ Plaintiff here has failed to prove the elements of a *prima facie* case. The evidence does not indicate that defendant Cameron gave plaintiff any sexual gifts with the intent to intimidate or harass her. However inappropriate such gifts and actions might seem, the court must find that defendant Cameron did not violate plaintiff's equal protection right, and her § 1983 claim against Cameron must fail.

Prior to trial, plaintiff attempted to raise an additional claim under § 1983. Specifically, plaintiff contended the circumstances of her termination violated her right to due process. Plaintiff argued that she held a property interest in her employment and defendant violated that interest when it failed to provide her with notice of her termination or an opportunity to be heard.

While plaintiff's due process claim may well be meritorious, it was never raised in either the pleadings or the pretrial order, and consequently the claim was dismissed prior to trial.

The plaintiff additionally brought this action under 42 U.S.C. § 1981 alleging she was terminated on the basis of race. Specifically, as to her discharge she claims the responsible defendant is defendant Brand, her immediate employer, in his official capacity as Director of Sedgwick County Department of Community Corrections. She seeks damages against defendant Brand for mental and emotional pain and suffering, including frustrations, indignities, and humiliation endured as a consequence of her illegal discharge. She additionally seeks punitive damages against defendant Brand, claiming that her illegal discharge was malicious and deliberate.

The legal standards governing this case are well established. Plaintiff has the initial burden of proving a *prima facie* case of race discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1983). The burden of proof then shifts to the employer to establish some legitimate, nondiscriminatory reason for its decision, rebutting the presumption of discrimination raised by plaintiff's evidence. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824. If the defendant articulates such a reason, plaintiff must then be given an opportunity to demonstrate the employer's proffered reasons are not the true reasons for the decision. This burden merges with the ultimate burden of demonstrating to the court that plaintiff was the victim of intentional discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

The Tenth Circuit has held that a discharged employee makes a *prima facie* case of discriminatory discharge by proving four elements: (1) she was a member of a protected group; (2) she was qualified for her job; (3) she was terminated despite her qualifications; and (4) her position was filled by a member of a nonprotected group. *Brown v. Parker–Hannifin Corp.*, 746 F.2d 1407, 1409–10 (10th Cir.1984); *Crawford v. Northeastern Oklahoma University*, 713 F.2d 586, 588 (10th Cir. 1983).

Initially, as to plaintiff's § 1981 claim, the court finds that plaintiff has clearly established a *prima facie* case of race discrimination. Plaintiff is a black female who was well qualified for her job as an office associate with the Department of

Community Corrections. She was terminated from this position despite her qualifications, and her position was filled by another.

█ Defendant Brand alleges there were legitimate, nondiscriminatory reasons for plaintiff's termination. Specifically, Brand testified he wanted to hire his own person, and he was not satisfied with plaintiff's performance for defendant Cameron.

The court is persuaded, however, that the reasons given by defendant Brand are not the true reasons for plaintiff's discharge, but rather, are a mere pretext for race discrimination. Plaintiff was a competent and professional employee who received above average and outstanding evaluations for her work and also received several merit pay increases. Further, the court finds plaintiff's testimony concerning the derogatory and racist remarks directed at her by defendant Brand to be credible and compelling. Moreover, plaintiff's testimony was supported by the testimony of Cyril Foote, the county's current affirmative action director. This court is persuaded that plaintiff was subjected not just to an isolated or occasional racial remark, but rather, to continuous and pervasive racial slurs and epithets at the hands of defendant Brand. This evidence, along with the evidence of plaintiff's ability and competence, leads the court to conclude that the reasons given by defendant Brand for plaintiff's termination were a mere pretext for race discrimination. Further, the court finds defendant Brand's actions were undertaken willfully, deliberately, and with malice.

IT IS ACCORDINGLY ORDERED this 3d day of September, 1988, as follows:

The court holds that the sole cause of plaintiff's termination was by reason of her race, in violation of 42 U.S.C. § 1981, and as a consequence enters judgment against defendant Michael Brand in his official capacity in the amount of $100,000.00, together with punitive damages in the amount of $10,000.00. Further, the court enters judgment against defendant Sedgwick County Commission for lost income as a consequence of plaintiff's illegal termination in the amount of $10,748.05.

The court enters certain directives to the Sedgwick County Commission as follows:

Plaintiff is ordered reinstated to her former employment, or, as may be mutually agreed upon, one commensurate with it in Range 20, Step 2, as defined by the county. This reemployment shall transpire within 45 days of this order. In this regard, and within five days from the filing of this order, the plaintiff, with her attorney, shall present herself to the office of Chairman Scott, who in turn will accompany plaintiff to the personnel office and remain with her until such time as suitable employment is reached. If, for whatever reason, the commission elects not to accept the plaintiff for employment, then on the 45th day thereafter the plaintiff's salary in the amount of $19,245.00 per annum, together with full benefits, shall commence and be payable to her on a monthly basis.

A transcript of the proceedings taken up at the time of the announcement of the court's ruling on September 16, 1988, shall be made available to each member of the Sedgwick County Commission and each is directed to have read it and fully certify to this court that he has done so within 10 days hereof.

A copy of this order shall forthwith be conspicuously posted on every floor of the Sedgwick County Courthouse, including the reception room of the County Commission Offices and the Personnel Offices, as well as the reception room of every other Sedgwick County facility within Sedgwick County, including the offices of each department head, and it shall remain posted for a period of three months.

Attorney fees are awarded to plaintiff's attorneys for having prevailed here. Counsel are directed to prepare a statement in connection with their services and share it with counsel for defendants for concurrence as to its reasonableness. If an agreement is not reached, plaintiff's attorneys are requested to file an application here for their fees and expenses.

This matter is suspended on the court's docket until November 28, 1988, at 1:00

P.M., at which time counsel will come to chambers for a full report regarding compliance with this judgment and order.

## ON MOTION TO ALTER OR AMEND JUDGMENT

This case is before the court on defendants' motion to alter or amend judgment or in the alternative for a new trial, and on plaintiff's application for attorney fees. The court heard oral argument on both of these matters on November 28, 1988, and at that time denied defendants' motion to alter judgment and granted plaintiff's application for attorney fees, as more fully set forth herein.

### Motion to Alter or Amend Judgment or for New Trial

This civil rights case was fully tried to the court in September, 1988. At the close of trial, the court ruled in favor of plaintiff on her claim that she was unlawfully terminated from her employment on the basis of her race, and judgment was entered against defendant Michael Brand, in his official capacity, in the amount of $100,-000.00 together with punitive damages in the amount of $10,000.00, and against defendant Sedgwick County Commission for lost income as a consequence of plaintiff's termination in the amount of $10,748.05. However, the court found for defendants on plaintiff's claims of sexual harassment and denial of due process. These findings were memorialized in a memorandum and journal entry of judgment. *See supra.*

In finding for plaintiff on her claim of race discrimination, the court noted that plaintiff's testimony regarding the derogatory and racist remarks directed at her by defendant Brand was both credible and compelling. The court further noted that plaintiff's testimony was supported by the trial testimony of Cyrel Foote, who is currently the county's affirmative action director, but was formerly a co-employee of plaintiff in the community corrections department. *Supra* at 1479.

Defendants now seek, pursuant to Fed.R. Civ.P. 59, alteration or amendment of the court's judgment, or in the alternative a new trial. In support thereof, defendants attach the affidavit of Cecile Gough, an employee of the community corrections department, who testified at trial. Ms. Gough states that during the course of trial she had a conversation with Cyrel Foote, wherein Mr. Foote denied knowing anything about the racially derogatory comments allegedly made by defendant Brand to plaintiff. Defendants now contend that because Mr. Foote's testimony was the only testimony corroborating plaintiff's allegations of racial slurs by Brand, Ms. Gough's statements going to the credibility of Foote's testimony constitute "newly discovered evidence" which supports defendants' motion for alteration of judgment or new trial.

Defendants fail to cite any authority for the proposition that new evidence going to the credibility of a witness supports a motion for amendment of judgment or new trial. In fact, the rule is to the contrary. The grant of a new trial on the ground of newly discovered evidence is not particularly favored by the courts and rests almost wholly within the discretion of the trial court. *Harris v. Illinois–California Express, Inc.,* 687 F.2d 1361, 1375 (10th Cir. 1982). Moreover, newly discovered evidence that merely affects the weight and credibility of the evidence is ordinarily insufficient for a new trial. *See* 11 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2808. *See also Baruch v. Beech Aircraft Corp.,* 172 F.2d 445, 446 (10th Cir.1949).

Defendants have failed to cite the court to any material evidence, not discoverable at the time of trial, which, if presented at trial, would have led the court to a different result. The statements contained in Ms. Gough's affidavit go only to the weight and credibility of the evidence before the court, and the court finds such evidence insufficient to justify amendment of judgment or new trial.

Defendants additionally argue that amendment of judgment or new trial is warranted because the court, in its decision, failed to take into account some of the

evidence presented by defendants. The court has examined such evidence and finds defendants' contention to be without merit. While not specifically mentioned in the court's written memorandum, all of the evidence cited by defendants was given due consideration by the court. Accordingly, defendants' motion to alter or amend judgment, or in the alternative for new trial, is denied.

### Application for Attorneys' Fees

The court must next consider plaintiff's application for attorney fees pursuant to 42 U.S.C. § 1988. Under that statute, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The plaintiff is considered the "prevailing party" for attorneys' fees purposes if he or she succeeds "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). Since plaintiff succeeded on her claim of race discrimination, she is clearly a "prevailing party" under § 1988.

The starting point for calculating a reasonable fee award is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Riverside v. Rivera,* 477 U.S. 561, 568, 106 S.Ct. 2686, 2691, 91 L.Ed.2d 466 (1986); *Hensley v. Eckerhart,* 461 U.S. at 433, 103 S.Ct. at 1939. The court may then make adjustments to that fee as required by the circumstances of each case. *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 1543, 79 L.Ed.2d 891 (1984). Thus, in this case the court must determine (1) the number of hours reasonably expended; (2) a reasonable hourly rate; and (3) any adjustments necessary under the facts of this case.

(1) *Hours reasonably expended.* Plaintiff's attorneys, Beverly Dempsey and Greg Kite, have submitted detailed statements of their billable time. After carefully examining the statements submitted by each attorney according to the guidelines set forth in *Ramos v. Lamm,* 713 F.2d 546 (10th Cir.1983), the court finds such docu-

mentation to be adequate and holds that the hours spent were reasonably expended. Accordingly, the court finds that Ms. Dempsey expended approximately 340 hours preparing plaintiff's case for trial and 60 hours of trial time, for a total of 400 hours. Mr. Kite expended approximately 338 hours of time in preparation of plaintiff's case and 62 hours of trial time, for a total of 400 hours.

(2) *Reasonable hourly rate.* The establishing of hourly rates is within the discretion of the trial judge who is familiar with the case and the prevailing wage in the area. *Lucero v. City of Trinidad,* 815 F.2d 1384, 1385 (10th Cir.1987). While plaintiff's attorneys seek attorney fees at the rate of $125.00 per hour for pretrial and post-trial work, and $150.00 per hour for trial time, the court finds that a reasonable wage would be $100.00 per hour for pretrial and post-trial work and $125.00 per hour for trial time.

(3) *Adjustment of fees.* Finally, the court must consider whether an adjustment in fees is required because plaintiff was only partially successful in this case. Defendants point out that prior to trial the court dismissed plaintiff's due process claim because it was never raised in the pleadings or pretrial order. Following trial, the court held that while plaintiff's sexual harassment claim was actionable under 42 U.S.C. § 1983, that claim also failed for failure to establish a *prima facie* case. *See supra* at 1478. Consequently, defendants argue plaintiff's attorneys may not be awarded attorney fees for any time devoted to the preparation or trial of plaintiff's unsuccessful claims of sexual harassment and denial of due process.

The United States Supreme Court has held that in cases where a plaintiff attains only partial success, the district court must apply a two-part analysis in determining the award of attorneys' fees. *Hensley v. Eckerhart,* 461 U.S. at 434, 103 S.Ct. at 1939. First, the court considers whether the claims upon which plaintiff failed to prevail were related to plaintiff's successful claims. If unrelated, the final fee award may not include time expended on

the unsuccessful claims. If the unsuccessful and successful claims are related, then the court may apply the second part of the analysis, in which the court evaluates the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435, 103 S.Ct. at 1940. If the plaintiff obtained "excellent results," full compensation may be appropriate, but if only partial or limited success was obtained, full compensation may be excessive. Such decisions are within the court's discretion. *See, e.g., Hernandez v. George,* 793 F.2d 264, 268 (10th Cir.1986).

In this case, the court finds that plaintiff's claim of denial of due process went to the adequacy of the procedures and protections she received upon her termination and was not related to her claim that defendant Brand subjected her to continuous and pervasive racial slurs and epithets. In addition, the court holds that plaintiff's claim of sexual harassment was essentially separate and unrelated to her claim of race discrimination. The evidence supporting plaintiff's claim of sexual harassment consisted primarily of the introduction of gag gifts and objects given to the plaintiff by defendants Brand and Cameron as well as defendant Cameron's wife. With the possible exception of one item, this evidence was unrelated to plaintiff's claim that defendant Brand subjected her to continuous and pervasive racial slurs.

Accordingly, the court determines that the award of attorneys' fees should be reduced by approximately 40% in order to reflect that plaintiff was only partially successful in this case. When the total number of pretrial hours (680) and the total number of trial hours (120) for plaintiff's attorneys is multiplied by the rates of $100.00 and $125.00 respectively, the court arrives at a total amount of attorney fees in the amount of $83,000.00. When this amount is then adjusted as determined above, the court arrives at a figure of approximately $50,000.00. Of this amount, the court awards $25,000.00 to each of plaintiff's attorneys. Additionally, Mr. Kite is entitled to compensation for his expenses in the amount of $121.00 and for

his post-trial work in the amount of $3,855.00, for a total award to Mr. Kite of $28,976.00. Ms. Dempsey is entitled to be compensated for her expenses in the amount of $3,135.44 and for her post-trial work in the amount of $2,906.25, for a total award to Ms. Dempsey of $31,041.69, and a total award to both attorneys of $60,017.69.

IT IS ACCORDINGLY ORDERED this 2 day of December, 1988, that defendants' motion to alter or amend judgment, or in the alternative for new trial, is denied. It is further ordered that plaintiff's counsel are awarded attorney fees in the amount of $60,017.69.