James C. NORTH, Plaintiff–Appellant,

v.

MADISON AREA ASSOCIATION FOR RETARDED CITIZENS–DEVELOPMENTAL CENTERS CORPORATION, Defendant–Appellee.

No. 86–3145.

United States Court of Appeals, Seventh Circuit.

Argued June 1, 1987.

Decided April 4, 1988.

Jacqueline Macaulay, Borns Macaulay & Jacobson, Madison, Wis., for plaintiff-appellant.

Jane A. Edgar, Jenswold, Studt, Hanson, Clark & Kaufmann, Madison, Wis., for defendant-appellee.

Before CUMMINGS and CUDAHY, Circuit Judges, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

James North, a black male, brought suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981, alleging that his former employer, Madison Area Association for Retarded Citizens ("MAARC"), discriminated against him on the basis of his race. More specifically, North alleged that he was wrongfully discharged from his employment on the basis of his race; was subjected to racial harassment; and, was disparately treated at the time of his termination.[1]

Upon demand, and without objection, all issues were tried to a jury.[2] The jury, however, became deadlocked in its deliberations, and was unable to return a verdict. As a result, the district court declared a mistrial and thereafter directed a verdict in favor of MAARC on each count of the complaint, denying North's motion for a new trial. North filed a motion for reconsideration, which the district court denied. This appeal followed. For the following reasons, we now affirm the judgment of the district court.

## I. *STANDARD OF REVIEW*

"In reviewing a district court's grant of a motion for directed verdict ... the standard to be applied is the same as that applied by the trial court." *Panter v. Marshall Field & Co.*, 646 F.2d 271, 281 (7th Cir.), *cert. denied*, 454 U.S. 1092, 102 S.Ct.

658, 70 L.Ed.2d 631 (1981). We must determine whether the evidence presented at trial, when viewed in the light most favorable to the non-moving party and combined with all reasonable inferences that may be drawn therefrom, provides a sufficient probative basis for a verdict free from speculation over claims which are legally unfounded. *Webb v. City of Chester, Illinois*, 813 F.2d 824, 828 (7th Cir.1987); *Panter v. Marshall Field & Co.*, 646 F.2d at 281. It is well-established that:

> A mere scintilla of evidence is not enough to require the submission of an issue to the jury. The decisions establish a more reasonable rule "that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed."

*Gunning v. Cooley*, 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720 (1930), quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448, 20 L.Ed. 867 (1871); *Van Houdnos v. Evans*, 807 F.2d 648, 650 (7th Cir.1986); *Hohmann v. Packard Instrument Co.*, 471 F.2d 815, 819 (7th Cir.1973). A motion for directed verdict thus raises only a question of law, for which our review is *de novo*. *Webb v. City of Chester, Illinois*, 813 F.2d at 827; *McMahon v. Eli Lilly and Company*, 774 F.2d 830, 832 (7th Cir.1985).[3]

---

* Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

1. North's disparate treatment claim was originally limited to the receipt of post-termination benefits, specifically severance pay. The claim, however, was later expanded to include an allegation of differential compensation.

2. While a jury trial is a matter of right in a § 1981 action, no such right exists with respect to North's Title VII claim. *Williamson v. Handy Button Machine Co.*, 817 F.2d 1290, 1293 (7th Cir.1987). A demand, however, was made for jury trial on *all* issues, pursuant to Fed.R.Civ.P. 38; and neither the defendant, nor the district court, on its own initiative, raised an objection.

*See* Fed.R.Civ.P. 39. Accordingly, the jury's verdict would have had the same effect as if a jury trial had been a matter of right. *U.S. Philips Corp. v. Ferro Corp.*, 522 F.2d 1100, 1102 (6th Cir.1975); *Kelly v. Shamrock Oil & Gas Corp.*, 171 F.2d 909, 911 (5th Cir.1948), *cert. denied*, 337 U.S. 917, 69 S.Ct. 1159, 93 L.Ed. 1727 (1949).

3. MAARC maintains that the district court's findings with respect to the motion for directed verdict and motion for reconsideration should be accorded the substantial deference due under the clearly erroneous standard of Fed.R.Civ.P. 52. We do not agree. Findings of fact are required only in actions tried upon the facts without a jury or with an advisory jury, Fed.R. Civ.P. 52(a); they are not required on the granting of a motion for directed verdict. *Garrison*

## II. *FACTS*

The facts, viewed in a light most favorable to North, are as follows. MAARC is a nonprofit, publicly-funded corporation that serves developmentally disabled adults. As a corporate entity, MAARC acts primarily through its Board of Directors, a group of about twelve volunteers, most of whom have an adult child or relative who is a MAARC client. Among its other powers, the Board has the sole authority to make employment decisions, including the authority to hire and fire personnel, and to award employment benefits. MAARC receives the majority of its funding, approximately one million dollars, from the Unified Services Board, a county agency, and the rest from Title XIX (a federal program serving the handicapped), donations and income from subcontract work performed by MAARC clients.

James North began his employment with MAARC in May 1974, as an instructor. In 1977, he became coordinator of a new project known as Property Maintenance Services ("PMS") in which eligible clients were divided into crews and sent into the community to perform generally maintenance-type services on a subcontract basis. The program thus generated both income and expenses for MAARC. In 1979, North's position was upgraded to that of PMS manager, in which capacity he performed both administrative and client-related duties. The greater percentage of North's time as manager was spent working with the clients. There were two non-management supervisory positions under North in the PMS program: a work coordinator and a work supervisor. Both positions were "union jobs" and involved only client-related responsibilities.

In August 1981, the Board of Directors appointed Richard Berling as the new Executive Director of MAARC. MAARC had been experiencing financial difficulties prior to Berling's arrival, with the corporation showing a net loss in 1980. Those difficulties continued in 1981 when MAARC was notified by the Unified Services Board that its funding would be cut for the last three months of 1981. In October 1981, MAARC lost a quarter million dollar transportation contract with Dane County, Wisconsin, for the upcoming year. In 1982, the Unified Services Board again proposed a decrease in funding to MAARC, and recommended that MAARC meet the financial demands placed upon it by reducing its administrative staff where possible, without reducing client services.[4]

In accordance with the Unified Services Board directive, MAARC undertook a reorganization of its administrative staff at the end of 1981 and beginning of 1982. The positions of marketing manager, personnel officer, assistant executive director and transportation officer were eliminated.[5] In addition, the position of business manager was downgraded to an accounting position with a reduction in salary. All of these positions were held by white individuals.

The Unified Services Board recommended further reduction of MAARC's administrative staff as part of its 1983 budget proposal. Faced with potential funding cutbacks, Richard Berling prepared a list of proposed alternatives for dealing with the problem and presented it to the Board of Directors and its respective committees for their review. Eighteen alternatives were listed, including the proposed reduction of administrative staff. Five options were listed for reducing administration, one of

*v. Jervis B. Webb Co.,* 583 F.2d 258, 261 n. 3 (6th Cir.1978); *Weir v. Chicago Plastering Institute,* 272 F.2d 883, 888 (7th Cir.1959). The district court's findings in the present case were not made in accordance with Fed.R.Civ.P. 52, and are therefore not subject to the clearly erroneous standard articulated therein.

**4.** The record reflects that while MAARC's Unified Services Board funding was not in fact decreased by the proposed 10% in 1982, its actual 1982 contract with the Unified Services

Board was prorated by one percent. As a result, MAARC's Unified Services Board funding for that year was reduced from $923,347.00 to $914,114.00.

**5.** Only two people were actually terminated upon elimination of their position, the marketing manager and the transportation officer. The personnel officer and assistant executive director accepted other positions within MAARC, one of which was also subsequently eliminated and the individual terminated.

which was the elimination of the position of PMS manager, the position held by North.

The Board of Directors subsequently voted to eliminate North's position and to terminate his employment. North was notified of the Board's decision on January 5, 1983, with termination to be effective January 31, 1983. North thereafter made a written request for termination benefits in the form of vacation pay, compensatory time, and severance pay. With the exception of vacation pay, North's request was rejected by the Board. At the time of his termination, North was earning an annual salary of $15,793.00.

 North argues on appeal that sufficient evidence was introduced at trial from which a jury could have found in his favor as to each of the claims presented, and that the district court therefore erred in granting a directed verdict for MAARC. North premises his argument with two conclusions which he deems to have been conceded by the district court: first, that a reasonable jury could have found that Richard Berling harbored some discriminatory animus toward him, and that Berling's recommendation to eliminate North's position was motivated by an intent to discriminate

against North because of his race; and second, that the district court, in reaching its original decision, applied an inappropriately strict standard when it required North to show that the Board acted in "complete reliance" on Berling's recommendation when it eliminated North's position. North maintains that on reconsideration, the district court acknowledged that it had set an improperly high standard, and, accordingly, modified its order on reconsideration to apply a "but for" analysis. North, however, did not deem it necessary to identify for this court the standard(s) which he maintains would be applicable in this case. It is only after MAARC sets out the standards for determining employer liability and intentional discrimination in its response, that North addresses his arguments in light of those standards. North argues in his reply that MAARC could be held strictly liable for the Board's action if Berling's racially discriminatory motive influenced the Board's decision, and was thus a determining factor in that decision. North concludes that this is true regardless of whether the Board had knowledge of Berling's discriminatory motive.[6]

North maintains that Berling did exert such influence over the Board, and that

6. North addressed the standards which he deems applicable for determining intentional discrimination and employer liability for the first time in his reply brief. His original brief contains neither legal argument nor citation of authority with respect to these standards. MAARC accordingly moved to strike North's reply brief on the grounds that it contained arguments, contentions, and citations of cases not contained in North's original brief or MAARC's response thereto, and raised issues which were not previously presented. Fed.R. App.P. 28(c) and 7th Cir.R. 28(e) (1987). North argues to the contrary that his reply brief is responsive to the arguments raised in MAARC's brief, and that the motion to strike should therefore be denied. We agree.

To prove his case, North must demonstrate not only that MAARC is liable for the discriminatory acts of its Board of Directors and/or its Executive Director, *see Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); but also that MAARC's proffered explanation for its actions was a mere pretext for intentional discrimination. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 100 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792,

93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). These issues were central to the district court's decision in directing a verdict for MAARC, and are no less important on appeal; and yet, North found it unnecessary to identify the applicable standards for making these determination, and to address his original arguments to those legal standards. MAARC was left with little alternative but to address issues not formally raised by North, or risk waiving its arguments.

North's failure to cite a single authority in his original brief interpreting the legal standards which are central to this case gives this court cause to question the adequacy of that brief, *see Morris v. Jenkins,* 819 F.2d 678, 681–82 (7th Cir.1987), and to give serious consideration to granting MAARC's motion to strike the reply brief. We find, however, that North's reply was responsive to matters which were raised for the first time in MAARC's response. We have previously held that "where an appellee raises a[n] argument not addressed by the appellant in its opening brief, the appellant may reply." *Bennett v. Tucker,* 827 F.2d 63, 70 n. 2 (7th Cir. 1987); *see also Hussein v. Oshkosh Motor Truck Co.,* 816 F.2d 348, 359 (7th Cir.1987) (opinion by Posner, J.). Therefore, we deny the motion to strike.

there was no evidence to support the district court's conclusion that the Board actively investigated matters on its own or acted on its own initiative without Berling's guidance, or that it considered alternatives other than those offered by Richard Berling when it voted to eliminate North's position. North would have the court infer from this lack of evidence that the Board would not have eliminated his position but for Berling's recommendation.

North proceeds by challenging the credibility of MAARC's proffered reasons for his termination. He maintains that the evidence does not support the conclusion that MAARC was under severe financial restraints at the time of his termination; or that there was any shift in the clientele and the programs in which they were involved which would have required administrative reorganization of the type proposed by Berling. Finally, North argues in a very cursory manner that there was sufficient evidence to support his claims of racial harassment and disparate treatment.

### III. *DISCUSSION*

#### A. *Wrongful Discharge*

Whether MAARC intentionally discriminated against North when it terminated his employment is the ultimate factual inquiry in this case. *U.S. Postal Services Board of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *Andre v. Bendix*, 774 F.2d 786, 793 (7th Cir.1985). MAARC presented evidence at trial that the elimination of North's position was the result of program funding cutbacks, a general need for reorganization within the corporation, and a desire to change the emphasis of the program away from group-type maintenance employment to a more individualized job placement program in which clients could better interact with society. Any presumption of discrimination created by North's *prima facie* showing at trial therefore dropped from the case. *Burdine*, 450 U.S. at 254–55, 101 S.Ct. at 1094; *Yarbrough v. Tower Olds-*

*mobile, Inc.*, 789 F.2d 508, 511 (7th Cir. 1986); *Andre*, 774 F.2d at 792. North was thus faced with the ultimate burden of showing that the stated reason for his discharge was actually a pretext for intentional discrimination. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973). He does not meet that burden simply by showing that MAARC's stated reasons were pretextual; he must also show "a casual chain in which race ... play[ed] a dispositive role." *Pollard v. Rea Magnet Wire Co., Inc.*, 824 F.2d 557, 559 (7th Cir.), *cert. denied*, — U.S. ——, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987). "Unless [North's] race mattered— unless he would have been kept on if he were white—he is not entitled to relief." *Pollard*, 824 F.2d at 560–61. Discriminatory intent must be a "but for" cause of the adverse employment action. *Aikens*, 460 U.S. at 714–16, 103 S.Ct. at 1481–82; *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095; *McDonnell Douglas Corp.*, 411 U.S. at 804–05, 93 S.Ct. at 1825; *Maguire v. Marquette University*, 814 F.2d 1213, 1216–17 (7th Cir.1987); *Germane v. Heckler*, 804 F.2d 366, 368 (7th Cir.1986). Even after North has met his burden of demonstrating discriminatory intent, MAARC may still avoid liability if it can prove that the decision to terminate North would have been made even in the absence of discrimination. *Maguire*, 814 F.2d at 1217; *Blalock v. Metal Trades, Inc.*, 775 F.2d 703, 712 (6th Cir.1985).

In its original order granting the motion for directed verdict, the district court found that North had failed to produce any evidence of racial bias on the part of the Board of Directors or to show that the Board had abdicated its responsibilities and acted in complete reliance upon Berling's recommendation without exercising any independent judgment. It therefore concluded that no reasonable jury could find for North on his claim of discriminatory discharge. In denying the motion for reconsideration, the district court modified the language of its ruling. The district court found no evidence to support the conclusion

that Berling's motivation and recommendation were a "but for" cause of North's discharge, even if that motive had been known to the Board, and accordingly reaffirmed its grant of a directed verdict for MAARC.

It was the Board of Director's decision to eliminate North's position, and it would normally be its motivation which would determine MAARC's liability. We concur with the district court, however, in finding no evidence of discriminatory motive on the part of the Board of Directors. North does not contend otherwise on appeal; but rather maintains that it is Berling's motivation which forms the basis of liability in the present case.

We find North's arguments on appeal to be unpersuasive. The evidence presented at trial establishes neither a basis for employer liability, nor demonstrates that any discriminatory animus on the part of Richard Berling was a "but for" cause of the termination of North's employment.

■ *EMPLOYER LIABILITY:* While this circuit had until recently adhered to a rule of strict liability, holding an employer strictly liable for the discriminatory acts of its supervisory employees "regardless of whether the employer knew or should have known of their occurrence ...", *Horn v. Duke Homes, Division of Windsor Mobile Homes, Inc.,* 755 F.2d 599, 604 (7th Cir. 1985), it is clear in light of the decision in *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) and cases which follow, that employers are no longer to be held to such a strict standard in every case in which the actions of a supervisory employee are in question. The Supreme Court held in *Meritor* that lower courts should instead "look to agency principles for guidance" in determining employer liability under Title VII, specifically referring the courts to the Restatement (Second) of Agency §§ 219–237 (1958) for guidance. *Meritor,* 106 S.Ct. at 2408.[7]

■ MAARC could thus be held strictly liable for Berling's alleged acts of discrimination only if the decision to discharge North was within the apparent scope of the authority entrusted to him by MAARC: that he either had the direct authority to fire North, *Van Houdnos v. Evans,* 807 F.2d 648, 653–54 (7th Cir.1986); *Henson v. City of Dundee,* 682 F.2d 897, 909 (11th Cir.1982) ("When [the employer gave] its [supervisory personnel] the authority to fire employees, it also accepted responsibility to remedy any harm caused by [the supervisor's] unlawful exercise of that authority"); Restatement (Second) of Agency § 219(2)(d) (a master is liable for the tort of his servant *if the servant "was aided in accomplishing the tort by the existence of the agency relationship"),* or that he, at the very least controlled or influenced the decision of the entity which had such authority (in this case, the Board of Directors). *See Van Houdnos,* 807 F.2d at 653; *but cf. Morales v. Cadena,* 825 F.2d 1095, 1100–01 (7th Cir.1987) (supervisor indirectly involved in hiring decision not liable for damages). In the absence of such apparent authority, MAARC could be held liable for discriminatory actions which were attributable to Berling only if it knew or should have known of those actions and failed to take reasonable remedial measures. *Hunter v. Allis–Chalmers Corp., Engine Division,* 797 F.2d 1417, 1422 (7th Cir.1986); *Henson v. City of Dundee,* 682 F.2d at 905; *Bundy v. Jackson,* 641 F.2d 934, 943 n. 8 (D.C.Cir.1981).

■ The district court found that there was insufficient notice to the Board of Directors of any discriminatory motive on Berling's part to establish liability under the later theory. It also found no evidence that Berling had been delegated the authority to hire or fire MAARC employees. Our review of the record does not lead to a contrary conclusion. Assuming therefore that Berling's recommendation may have been motivated by a discriminatory intent, a point which we do not concede, liability could only attach if North sufficiently dem-

---

7. While *Meritor* was limited in its facts to a claim of sexual harassment, the conclusions reached by the Court are, in our opinion, not so limited, but rather apply to any claim under Title VII in which employer liability is an issue.

onstrated that Berling controlled or influenced the Board of Director's decision to eliminate North's position. The district court concluded that North failed to meet that burden, and we concur.

North maintained at trial and on appeal that the Board of Directors acted as merely a "rubber stamp" for Berling's proposals. The evidence, however, does not support such a conclusion. Five Board members testified at trial; each testified that there were financial restraints and/or a general business need for administrative reorganization within MAARC which formed the basis of his or her decision to eliminate North's position. There was no evidence to suggest that discrimination played any role in their decision. The only testimony to the contrary was presented by John Prochaska, the former accountant at MAARC who testified that the Board generally approved Berling's recommendations; and by North himself who testified that Berling once told him that he "ran the Board". This evidence alone does not support a finding that the specific employment decision being challenged in this case was effectively made or influenced by Berling.

■ *"BUT FOR" CAUSATION:* While this case may be resolved on the issue of employer liability, we find causation, or the lack of it, to be the true dispositive factor. For even if we assume *arguendo* that North has established a sufficient basis for employer liability, and has met his burden of showing discriminatory intent on Berling's part in recommending the elimination of North's position, he has failed to demonstrate that the Board's proffered reasons for eliminating North's position were pretextual, or that race was a motivating or substantial factor behind that decision. *See Maguire v. Marquette University,* 814 F.2d at 1218; *Sherkow v. Wisconsin,* 630 F.2d 498, 502 (7th Cir.1980). The evidence clearly showed that the Board would have reached the same decision regardless of North's race. As District Judge Crabb stated, the "elimination of plaintiff's position was inevitable under the circumstances existing in late 1982. These circumstances included severe financial constraints, large-

ly attributable to significant declines in federal funding; a shift in the kinds of clients being assigned to defendant to more severely disabled persons who would be unable to perform the kind of work plaintiff was directing; a calculated shift in emphasis away from expansion of the maintenance service program that plaintiff directed; and a program-wide cutback in administrative positions." *North v. Madison Area Assoc. for Retarded Citizens–Developmental Centers Corp.,* No. 84–C–861–C, Mem.Op. at 4 (W.D.Wis. November 10, 1986). We conclude therefore that North has failed to carry his burden of proving discriminatory intent, and thus to establish an actionable claim of race discrimination under Title VII. *Pollard v. Rea Magnet Wire Co., Inc.,* 824 F.2d at 560–61; *Maguire,* 814 F.2d at 1217; *Blalock v. Metals Trades, Inc.,* 775 F.2d at 712.

North has also filed a claim of discrimination under 42 U.S.C. § 1981, which provides that "[a]ll persons ... shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens." Section 1981 forbids racial discrimination in employment. *Johnson v. Railway Express Agency,* 421 U.S. 454, 460, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975); *Hunter,* 797 F.2d at 1420. Despite significant differences between 42 U.S.C. §§ 2000e and 1981, including the extent of coverage, the procedure to be followed and the remedy, there are no relevant substantive differences between North's § 1981 claim and his Title VII claim. *See Hunter,* 797 F.2d at 1420–21; *Yarbrough v. Tower Oldsmobile, Inc.,* 789 F.2d 508, 511 (7th Cir.1986). The standards governing liability are the same. *Yarbrough,* 789 F.2d at 511. Accordingly, for the reasons previously articulated, we find that North has failed to present sufficient evidence to establish an actionable claim of race discrimination under § 1981.

### B. *Racial Harassment and Disparate Treatment*

■ North's racial harassment and disparate treatment claims require far less discussion. While it is true that racial harassment can form the basis of both a

Title VII and a § 1981 action, it is equally true that occasional or sporadic uses of racial slurs or epithets will not in and of themselves support an actionable claim of racial harassment under Title VII or § 1981. *Meritor Savings Bank, FSB v. Vinson,* 106 S.Ct. at 2406; *Nazaire v. Trans World Airlines, Inc.,* 807 F.2d 1372, 1380 (7th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1979, 95 L.Ed.2d 819 (1987); *Torres v. County of Oakland,* 758 F.2d 147, 152 (6th Cir.1985); *Henson v. City of Dundee,* 682 F.2d 897, 904 (11th Cir.1982); *Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir.1971), *cert. denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972). "For [racial] harassment to be actionable it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor,* 106 S.Ct. at 2406, quoting *Rogers,* 454 F.2d at 238. Whether the quantity and frequency of such incidents sufficiently constitute a violation of Title VII or § 1981 is determined by reviewing the totality of the circumstances on a case by case basis. *Nazaire,* 807 F.2d at 1381.

▪ The district court found that North had failed to produce evidence of a sufficiently pervasive atmosphere of racial harassment to support his claim. We concur. North identified only two or three statements made by Berling or co-workers during the ten years of his employment with MAARC which *might* be considered as racial slurs. These incidents alone are not, in our opinion, sufficiently severe or pervasive enough to have altered any conditions of North's employment or to have created an abusive working environment. We find that a reasonable jury could not conclude otherwise, and accordingly affirm the district court's grant of a directed verdict for MAARC on North's claim of racial harassment.

▪ *DISPARATE TREATMENT:* As in the case of wrongful discharge, North's disparate treatment claim raises but one issue for our review: whether MAARC intentionally discriminated against North on the basis of his race in terms of salary and termination benefits. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *McDonnell Douglas Corp. v. Green,* 411 U.S. at 804, 93 S.Ct. at 1825; *Pollard v. Rea Magnet Wire Co., Inc.,* 824 F.2d at 558. The district court found no evidence to support North's contentions that his job was compensated at a lower rate because of his race rather than because of the different kind of responsibilities, different number of employees that he supervised, his background, training, and experience. Neither did it find evidence to support North's claim of disparate treatment in terms of post-termination benefits. We find the conclusions of the district court to be clearly supported by the evidence.

North has failed to produce evidence, either direct or indirect, from which this court could infer that the Board of Directors at MAARC acted with discriminatory animus when it set North's salary and denied his request for severance pay and compensatory time benefits. Neither was there evidence that Berling in any way influenced the Board's decisions in these matters.

With respect to salary, the evidence clearly showed that there were no positions equivalent to that of PMS manager in terms of job responsibilities, number of employees supervised, the educational and employment background required to fulfill those responsibilities, and pay. To the extent North maintains that there was a disparity in the award of severance pay at the time of his termination, the evidence showed that only two MAARC employees received severance pay upon their termination, both under circumstances not applicable to North. Of those white employees who were terminated under similar circumstances, none were awarded severance pay. The evidence also showed that at the time North was terminated, MAARC had a written policy in effect which provided that compensatory time acquired by an employee during a given year must be used within that year, or lost. Under the policy, any time acquired by North in 1982 had to have been used by December 31, 1982, and would not have carried over into the next year. When North was terminated in 1983, he made a request for compensatory time benefits acquired in 1982. The Board of

Directors denied North's request. While there were white employees terminated in the course of the reorganization who did receive compensatory time benefits, there was no evidence to suggest that the time compensated was not in fact earned in the year acquired, and no such inference can be drawn from the record before this court.

Finally, North maintains that he was disparately treated because Berling did not provide him with a letter of recommendation upon his termination, while a white employee had been given such a letter. Nothing in the record, however, supports a conclusion that Berling was motivated by any discriminatory intent in not providing North with a letter of recommendation. The evidence showed that the white employee referred to by North had requested the letter of recommendation. North admittedly made no such request; and it cannot be inferred from the record that had he made such a request it would have been denied.

Accordingly, we find that North has failed to present sufficient evidence of discriminatory intent to survive a motion for directed verdict on his claim of disparate treatment.

## IV. *CONCLUSION*

We find, based on the foregoing, that North has failed to present evidence of sufficient probative value from which a jury could find in his favor on either his Title VII or § 1981 claim for wrongful discharge, racial harassment or disparate treatment, and accordingly AFFIRM the judgment of the district court in granting a directed verdict for MAARC on each count of the complaint, and in denying the motion for new trial.

CUDAHY, Circuit Judge, concurring in part and dissenting in part.

I agree with the majority that North failed to present enough evidence to entitle him to a jury verdict on his claims that he was subjected to on-the-job racial harassment and that he was discriminated against in the distribution of severance pay and benefits. I think, however, that it was incorrect to direct a verdict on North's claim that he was fired because of his race.

Because there was no evidence that the board acted from discriminatory motives, the majority rightly requires North to show that Berling "at the very least controlled or influenced the decision of the entity which had ... authority." *Supra* at page 407. I would think, however, that the power Berling exercised when he formulated the reorganization plan and appeared before the board as its chief executive officer to explain its merits might impress a jury as indicative of considerable "influence." Viewing the evidence in the light most favorable to North, Berling's powers seem much like the influence that the lead defendant in *Van Houdnos v. Evans,* 807 F.2d 648, 653–54 (7th Cir.1986), exerted over the hiring committee that recommended a male for the position that the plaintiff alleged she would have filled in the absence of discrimination. If Berling were the chief executive officer of a company and the board were a corporate board of directors—even the kind of "hands on" board that the district court and the majority find existed at MAARC—I cannot believe that board approval would be enough to keep a plaintiff from getting to a jury with a colorable claim that the CEO's proposals reflected discriminatory aims. I see nothing in the facts of this case that would *compel* a reasonable jury to find that the board's active style negated Berling's influence.

I also believe that the majority unduly downplays the potential significance of North's evidence tending to show that Berling's justifications for doing away with North's position during the reorganization were pretextual. "A demonstration that the employer has offered a spurious explanation is strong evidence of discriminatory intent" even if "it does not compel such an inference as a matter of law." *Benzies v. Illinois Dep't of Mental Health,* 810 F.2d 146, 148 (7th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 3221, 97 L.Ed.2d 737 (1987). The majority cites *Pollard v. Rea Magnet Wire Co.,* 824 F.2d 557 (7th Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987), to deprecate the significance of a showing of pretext. But *Pollard* does not preclude a factfinder from

inferring a discriminatory motive from evidence that stated motives are pretextual; *Pollard* holds that "reasons honestly described but poorly founded" represent bad judgment, not pretext, and that Title VII does not empower the courts to pass on the wisdom of nondiscriminatory business judgments, no matter how wrongheaded. *Id.* at 559. North attacked the plausibility of each of Berling's stated reasons for terminating him. Specifically, he argued that the organization's finances were on the upswing at the time he was fired, that the PMS program fitted well with the stated changes in MAARC's objectives and client population and that cutting North's job did not reduce the amount of staff time devoted to administrative tasks since North's job, as Berling had previously indicated in a written job description, was entirely devoted to client contact. A jury that believed North's evidence on these points could conclude that Berling's justifications for proposing to eliminate North's position during the reorganization were disingenuous. This conclusion could legitimately support a finding that North would not have lost his job "but for" Berling's discriminatory motives. I therefore respectfully dissent on the issue of North's right to a jury determination on his claim of discriminatory firing.