**Willie K. RIMPSON, Plaintiff,**

**v.**

**BLISS & LAUGHLIN STEEL, Defendant.**

**No. 96 C 4391.**

United States District Court, N.D. Illinois, Eastern Division.

Feb. 20, 1998.

Mr. Willie K. Rimpson, Chicago, IL, for Plaintiff.

Douglas A. Darch, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, Willie Rimpson, filed this Title VII action against the defendant, Bliss & Laughlin Steel ("B & L"), alleging discrimination in pay, racial harassment, retaliatory discharge, and discriminatory discharge.[1] B & L moves for summary judgment on all

---

1. Mr. Rimpson also alleged that B & L terminated him because of his race and color in violation of his rights and immunities protected by 42 U.S.C. § 1983. A § 1983 claim, however, is only available if state action is present. *Ezpeleta v.* *Sisters of Mercy Health Corp.*, 800 F.2d 119, 122 (7th Cir.1986). B & L is not a state actor but is a private employer. Therefore, Mr. Rimpson does not have a § 1983 claim.

counts. For the reasons set forth below, B & L's motion is granted.

## Background[2]

B & L hired Mr. Rimpson as an hourly employee in 1989. In 1991, he sought to advance to Job Class 19 ("JC–19"). Mr. Rimpson enrolled in B & L's apprenticeship program for advancement at Prairie State College ("Prairie State").

Under the terms of the collective bargaining agreement between B & L and the union that represents B & L's hourly employees, employees seeking to advance to JC–19 must first successfully complete an apprenticeship program at Prairie State. Employees must provide a copy of their transcripts or grades to show that they successfully completed the program. Advancement to JC–19 and the corresponding pay raise occur only after B & L receives an employee's transcript or grades from Prairie State. No employee has ever been advanced to a higher job classification or received a pay raise without first providing B & L with a copy of his or her transcript or grades.

Mr. Rimpson did not present B & L with his transcript or grades to show that he successfully completed the Prairie State program. The first notice B & L had that Mr. Rimpson completed his courses at Prairie State was when it received a copy of a charge of discrimination filed by Mr. Rimpson with the Equal Employment Opportunity Commission ("EEOC") on May 29, 1992. The charge alleged that B & L had failed to place him in JC–19 and increase his salary because of his race, black.

Subsequent to the charge, B & L asked Mr. Rimpson to provide it with his transcript or grades. When it became apparent that neither were forthcoming from Mr. Rimpson, on June 29, 1992, B & L sought and received his permission to obtain a copy of his academic record directly from Prairie State. On August 12, 1992, B & L received Mr. Rimpson's transcript which confirmed that he had taken the required training courses. Five days later, B & L placed him in JC–19 and he received his pay raise.

After Mr. Rimpson's advancement to JC–19, he repeatedly violated B & L's attendance policy. B & L has a disciplinary action procedure for absenteeism and tardiness which provides for progressive discipline. An employee is discharged if he commits an attendance infraction within 30 days of receiving a three-day suspension.

Mr. Rimpson received several verbal warnings for coming to work late before any written warning or action was taken against him. Then, in 1995, Mr. Rimpson received a written warning on January 18 for reporting to work late; a one-day suspension on January 24 for calling off his shift late; a three-day suspension on February 2 for reporting to work late; a one-day suspension on April 28 for reporting to work late; and a three-day suspension on May 22 for calling in sick without proof of illness. Within 30 days of his three-day suspension, Mr. Rimpson was late to work on June 3 and absent on June 5. B & L terminated his employment on June 7, 1995 pursuant to its disciplinary action procedure for unacceptable attendance.

On July 2, 1995, Mr. Rimpson filed an EEOC charge of discrimination claiming that he had been discharged in retaliation for filing his previous charge of discrimination in May 1992.

## Pay Raise Claim

Mr. Rimpson alleges that B & L discriminated against him on the basis of his race in that he was denied a JC–19 pay raise after he undertook an apprenticeship program while other similarly situated white employees were given a pay raise. He seeks to prove discrimination under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), burden-shifting method of proof. Consequently, Mr. Rimpson must first establish a *prima facie* case of discrimination by showing that: (1) he belongs to some protected class, (2) he

---

**2.** Mr. Rimpson was required to file a response to B & L's motion for summary judgment on December 1, 1997. No response was ever filed. Thus, I deem admitted all facts set forth in B & L's 12(M) statement because by·failing to file a response, Mr. Rimpson failed to controvert those facts. N.D. Ill. Local R. 12(N)(3).

performed his job satisfactorily, (3) he suffered an adverse employment action, and (4) his employer treated similarly-situated employees outside his classification more favorably. *Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1132 (7th Cir.1994). Once established, the burden of production shifts to B & L to articulate a legitimate, nondiscriminatory reason for its alleged discriminatory action. *Id.* at 1133. If B & L meets its burden, Mr. Rimpson must demonstrate that the reason is pretextual. *Id.*

B & L contests the fourth-prong of the *prima facie* case.[3] B & L defines similarly situated employees as all employees who undertook the apprenticeship program but never presented documentation to B & L that they completed the program. It contends that Mr. Rimpson did not establish his *prima facie* case because the two white employees who did receive raises before Mr. Rimpson, Forrest Oney and Douglas Steiber, had presented documentation to B & L before receiving their pay raise while Mr. Rimpson had not presented any documentation. I agree. However, assuming that the two white employees are considered to be similarly situated, in which case Mr. Rimpson could establish a *prima facie* case, B & L has articulated a legitimate, nondiscriminatory reason for not giving Mr. Rimpson his JC–19 pay raise sooner. B & L states that under the collective bargaining agreement, to receive a JC–19 pay raise, an employee must complete the apprenticeship program and present documentation to B & L, such as a transcript, to prove that he completed the program. Once the documentation is provided, the employee is entitled to a JC–19 pay raise. Mr. Rimpson did not present the required documentation prior to filing his charge of discrimination in May 1992, and thus, he did not receive a pay raise while other employees, who did present documentation, did receive the raise.

Mr. Rimpson must show that B & L's explanation for his failure to receive a pay raise is merely a pretext for discrimination. Mr. Rimpson has offered no evidence of pre-

text to rebut B & L's nondiscriminatory reason. In fact, Mr. Rimpson received a pay raise after he provided documentation to B & L. The evidence shows that no employee has received a JC–19 pay raise prior to providing documentation of completion of the apprenticeship program.

### Racial Harassment

■ Mr. Rimpson alleges racial harassment in Count I of his complaint. This claim, however, was not alleged in either of his EEOC charges. His 1992 EEOC charge alleged "race" discrimination and stated that "I believe that I have been discriminated against because of my race, Black ... in that White employees who took welding classes, did receive salary rate increases." There was no mention of any racial harassment. His 1995 EEOC charge alleged "retaliation" discrimination. He stated that "I believe that I have been retaliated against for filing a charge of discrimination ... in that Respondent discharged me due to attendance and tardiness while other employees with similar or worse attendance and tardiness have not been discharged."

■ Generally, "allegations that are not contained in an EEOC charge cannot be contained in a subsequent complaint filed in the district court." *Kirk v. Federal Property Management Corp.*, 22 F.3d 135, 139 (7th Cir.1994). This includes allegations of racial harassment. *See Oates v. Discovery Zone*, 116 F.3d 1161, 1168 (7th Cir.1997) (finding that plaintiff was precluded from claiming racial harassment where he failed to allege it in his EEOC charge). A plaintiff, however, may pursue a claim not explicitly in an EEOC complaint if "(1) the claim is like or reasonably related to the EEOC charges, and (2) the claim in the complaint reasonably could develop from the EEOC investigation into the original charges." *Harper v. Godfrey Co.*, 45 F.3d 143, 148 (7th Cir.1995).

■ To determine whether a claim is "like or reasonably related" to the EEOC charges,

---

**3.** B & L does not contest the other three prongs of the *prima facie* case. Mr. Rimpson is a member of a protected class—African Americans. There is no indication that in 1992 he was not

performing his job satisfactorily. And, Mr. Rimpson did suffer an adverse employment action—he did not receive a JC–19 pay raise.

there must be a factual relationship between the two. *Id.* "This means that the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals.*" *Cheek v. Western & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir.1994). Mr. Rimpson's harassment claim is based on the following: (1) two instances when Kenny Williams, a first shift supervisor allegedly called him a "black motherfucker," once in 1992 or 1993 and once at some other unknown time; (2) statements by two co-workers, Terry Bailey and Mike Swaim, that Robert Hunn, Mr. Rimpson's supervisor, had allegedly called Mr. Rimpson "a dumb nigger" outside of his presence towards the end of 1994; and (3) that Mr. Rimpson allegedly was required to work alone when he first started as a Millwright in 1990. None of these incidents describe conduct relating to the pay raise or the termination decisions. Mr. Williams did not play a role in the pay raise or termination decisions. Mr. Hunn was not the ultimate decision maker but was involved in both decisions. His alleged statement, however, was made over two years after the pay raise claim and over six months before the decision to terminate Mr. Rimpson. Finally, Mr. Rimpson does not indicate who made him work alone in 1990 nor is this incident close in time to either of Mr. Rimpson's EEOC charges. Thus, Mr. Rimpson's harassment claim is not like or reasonably related to either EEOC charge.

■ Even if Mr. Rimpson's racial harassment claim is within the scope of his EEOC charges, his claim would still fail. Mr. Rimpson bases his harassment claim on B & L's failure to assign him a partner in 1990 and three racial comments. "For [racial] harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *North v. Madison Area Ass'n for Retarded Citizens–Developmental Ctrs. Corp.*, 844 F.2d 401, 409 (7th Cir.1988) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). The court must look at the totality of the circumstances. *North*, 844 F.2d at 409. In this case, it is unclear how working alone is harassment. Furthermore, three racial comments over six years of employment do not rise to the level of racial harassment. *See North*, 844 F.2d at 409 (finding two or three racial statements over ten years insufficient to establish racial harassment); *see also McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 480 (7th Cir.1996) (holding that three sexual comments over a three month period did not amount to sexual harassment).

### Discriminatory Discharge

■ Mr. Rimpson alleges that he was discharged because of his race. B & L argues that this claim is barred because he only alleged retaliatory discharge in his EEOC claim and not discriminatory discharge. The discriminatory discharge claim, however, is reasonably related to the retaliatory discharge claim. It involves the same conduct, the decision to discharge Mr. Rimpson, by the same individuals. Furthermore, a finding of discriminatory discharge could have reasonably arisen from the EEOC's investigation of the reasons for Mr. Rimpson's discharge. In reviewing the retaliatory discharge claim, the EEOC would have examined the initial EEOC charge which alleged racial discrimination in pay. If race was allegedly a factor in the past, the EEOC would reasonably have investigated whether it was a factor in Mr. Rimpson's termination.

■ B & L contends that Mr. Rimpson has failed to establish a *prima facie* case of discriminatory discharge. In particular, B & L alleges that he failed to show that he performed his job satisfactorily or that B & L treated similarly-situated employees outside of his class more favorably.

Mr. Rimpson was not performing his job satisfactorily. Mr. Rimpson was repeatedly warned and suspended for absenteeism and tardiness. *See Bush v. Commonwealth Edison Co.*, 990 F.2d 928, 931 (7th Cir.1993) ("[A] worker who for whatever reason does not show up for work regularly is not a satisfactory employee."), *cert. denied*, 511 U.S. 1071, 114 S.Ct. 1648, 128 L.Ed.2d 367 (1994). Furthermore, similarly-situated white employees were not treated more favorably. Mr. Rimpson identified two white

employees, Mr. Bailey and Mr. Swaim, who he claims frequently had attendance problems but were never disciplined or discharged. Mr. Bailey, however, received a one-day suspension on August 6, 1996, for reporting to work late, a written warning for not completing his work and leaving work without notifying his supervisor, and was eventually terminated on August 14, 1996 for "no call/no show." Similarly, Mr. Swaim received a written warning for reporting to work late on May 25, 1995, a one-day suspension for reporting to work late on July 5, 1995, a three-day suspension for refusing to work on July 7 and 8, 1995 and a three-day suspension for being late on September 5, 1995.

The evidence shows that Mr. Swaim was repeatedly disciplined until he quit after his second three-day suspension and that Mr. Bailey was discharged for not showing up or calling work after repeated attendance problems. Further, B & L has terminated at least three other white employees for attendance infractions. Thus, Mr. Rimpson has failed to present a *prima facie* case of discriminatory reasons for his discharge by B & L.

### Retaliatory Discharge

Mr. Rimpson claims that B & L terminated him in June 1995 in retaliation for filing a prior charge of discrimination in May 1992 with respect to his pay raise claim. To establish a *prima facie* case of retaliation, Mr. Rimpson must show that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse action by his employer; and (3) there is a causal link between his protected expression and the adverse action. *McKenzie,* 92 F.3d at 483.

Mr. Rimpson has not presented any evidence, except timing, to establish a causal connection between the filing of his first EEOC charge and his discharge. More than three years, however, passed between the filing of his initial charge and his termination. This gap in time is insufficient without more to establish a causal connection. *See Bush,* 990 F.2d at 934 (refusing to infer a causal connection, as too speculative, where a year and a half passed between the statutori-ly-protected conduct and the alleged retaliation).

### Conclusion

For the foregoing reasons, B & L's motion for summary judgment is granted.